### RIEGEL v. PULLMAN CO.

(Circuit Court of Appeals, Third Circuit. January 21, 1914.)

No. 1 783.

CARRIERS (§ 320*)—PASSENGER'S ACTION FOR INJURIES—INSTRUCTIONS—CONFORMITY TO PLEADINGS AND ISSUES.

In a passenger's action for injuries caused by a door of a car swinging shut when he lost his balance and placed his hand thereon, where the statement charged negligence in not properly securing and fastening the door, plaintiff testified that the door was regulated as other doors were, one of his witnesses testified that the fastener was one with jaws and a tongue that came in and held it, there was no proof, suggestion, or charge of negligence raising any question as to a spring-jawed catch being a proper kind of appliance, the court without objection or exception in response to a contention of plaintiff stated that it was the company's duty to secure fasteners such as were usually used and to keep them in proper condition for the purposes for which they were used, thus showing that, as the case was tried, the issue was whether the catch worked, and the court charged that such doors were not intended to be fastened so they could not be opened and closed, and that the intention was that the fasteners should hold them so as to require a vigorous pull to loosen them, and so that if they were pushed back hard they would fasten, a further instruction that if defendant used the ordinary fasteners used to fasten doors of that kind, and if the fastener was in the usual condition and held the door as such fasteners were intended to hold doors, it had done all that the law required was not error, as, in view of the pleadings, proof, and course of the trial, it properly treated the fastener on that car as the only one involved, and left to the jury only the issue as to whether the particular fastener was in such order as to require a vigorous pull to open it and a hard pull to close it.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1118, 1126, 1149, 1153, 1160, 1167, 1179, 1190, 1217, 1233, 1244, 1248, 1315–1325; Dec. Dig. § 320.*]

In Error to the District Court of the United States for the Eastern District of Pennsylvania; James B. Holland, Judge.

Action by W. A. L. Riegel against the Pullman Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Ladner & Ladner, of Philadelphia, Pa., for plaintiff in error.

C. Andrade, Jr., of New York City, and Francis S. Cantrell, Jr., of Philadelphia, Pa., for defendant in error.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
210 F.—18

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

BUFFINGTON, Circuit Judge. In this case Dr. William A. L. Riegel, the plaintiff, brought suit against the Pullman Company in a state court. Later the case was removed to the court below, where the jury rendered a verdict for the Pullman Company. On entry of judgment thereon, plaintiff sued out this writ.

Dr. Riegel was riding in the smoking room of a Pullman parlor car. His evidence was: That as he arose to leave that compartment the car gave a very heavy lurch, which threw him off his balance. That he put out his hand to steady himself when the compartment door swung shut and his thumb was caught and crushed by the hinged side of the door. His testimony as to the door was:

"It was regulated like all those doors that I have seen."

Buckner, a fellow passenger, testified:

"I examined the fastener and it did not seem to be secure. It was one of those kind of jaws that slip in like that. It was one of those fasteners with jaws, so to speak, and a tongue came in like that and held it. I examined it and it did not seem to be secure. It would sway like that, without coming out of the fastener, which showed that it was not secure. It would sway in the fastener when you would pull it. It would require a very slight pull to take it out."

On the part of the defense was the testimony of the porter that he saw the plaintiff immediately after the occurrence.

"I asked him what the trouble was. He told me he had caught his thumb in the door. He said he was sitting in the smoker with his hand on the door that way, with his thumb in the crack, and the door came to on him. He refused to give me his name absolutely. He said there was no one to blame but himself for it when I asked him for his name."

The porter also testified he examined the catch and found no defect; that it was firm; that it was the catch used generally on Pullman cars. The conductor testified:

"I asked him to show me where he was injured, and he promptly unwrapped his thumb and showed me that his thumb had been injured, and I asked for his name and address, and he objected to giving them to me. I asked him why, and he said it was only trifling at that time and not necessary to bother anything about it, and there was no one to blame but himself."

And:

"I found it as the usual catch is. That is to say, in good order. Its function was to hold the door back, of course, and when you push the door back it stayed there. I went back there and tried the door in the catch to see if the fault was there, but the catch held the door the same as ordinary catch springs do."

The plaintiff denied he told either conductor or porter that it was his own fault.

The statement charged that plaintiff was injured by "the negligence of the defendant company, its servants and employés, in not properly securing and fastening said door." In view of this charge in the pleadings and the proofs in the case, it is clear that the course of the trial was as to the condition of the catch used. There was no proof, suggestion, or charge of negligence which raised any question as to a

spring-jawed catch being a proper kind of appliance. The plaintiff's point, "It is the duty of the defendant to provide doors that are kept open with secure fastener and to inspect them often enough to insure discovery of any defect or weakening," and the court's answer, "It is the duty of the company to secure fasteners such as are usually used and to keep them in proper condition for the purposes for which they are used," to which no objection or exception was then taken, shows that, as the parties tried the case, the issue for the jury was whether the catch on this door did its work. In that respect the court said:

"Those doors, as you know, are not intended to be fastened so they cannot be opened and closed, and the intention of those fasteners is that they shall hold them, so as to require a vigorous pull to loosen them, and if you push them back hard they fasten so that you do not have to hook or unhook them."

Certainly the plaintiff had no reason to complain of this standard of "a vigorous pull" to open and "push them hard back" to close. But even with this required standard the jury found for the defendant. It is now contended, however, that the court erred when it charged:

"That if defendant used the ordinary fastener used to fasten doors of that kind back and to open them, and that fastener was in the usual condition and held the door as those fasteners are intended to hold doors, * * * then the defendant company has done all that the law requires of it."

In view of the testimony of the plaintiff himself that the door was regulated as other doors were, that of his witness, the negligence charged in his statement, the answer to his point, and the general course of the trial, we find no error in the court also treating the fastener on that car as the only one involved and in leaving to the jury the issue on which the case turned, namely, whether that fastener was in such order as to require a vigorous pull to open it and a hard pull to close it. In plain and simple terms the working order of the device was submitted to the jury, and the outcome shows they were satisfied with its condition and workings.

Such being the case, it follows the defendant was not negligent, and the judgment below should be affirmed.